| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NO. |
|---|---|
| **PLAINTIFF(S)**<br>Curtis James Jackson, III | **DEFENDANT(S)**<br>GSO Business Management LLC; Jonathan Schwartz, Michael Oppenheim, Bernard Gudvi, Nicholas Brown and William Braunstein |
| **ATTORNEY(S)** (Firm Name, Address, Telephone No.)<br>James Berman<br>John L. Cesaroni<br>Zeisler & Zeisler, P.C.<br>10 Middle Street, 15th Floor<br>Bridgeport, CT 06604    Telephone: 203-368-4234 | **ATTORNEY(S)** (If Known) |
| **PARTY** (Check One Box Only)<br>☑ Debtor ☐ U.S. Trustee<br>☐ Creditor ☐ Trustee ☐ Other | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee<br>☐ Creditor ☐ Trustee ☑ Other |

**CAUSE OF ACTION** (Write a brief statement of cause of action, including all U.S. statutes involved.)

Breach of fiduciary duty; conversion; unjust enrichment; and negligence

## NATURE OF SUIT

(Number up to 5 boxes with the lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

*Note: Only a complaint including an objection to discharge under 11 U.S.C. § 727 will defer the clerk's entry of the debtor's discharge in bankruptcy. A complaint to determine the dischargeability of a debt under 11 U.S.C. § 523 does not affect the entry of a discharge with respect to other debts.*

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11 – Recovery of money/property - § 542 turnover of property
☐ 12 – Recovery of money/property - § 547 preference
☐ 13 – Recovery of money/property - § 548 fraudulent transfer
☑ 14 – Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21 – Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31 – Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41 – Objection/revocation of discharge - § 727(c), (d), (e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51 – Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66 – Dischargeability - § 523(a)(1), (14), (14A) priority tax claims
☐ 62 – Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 – Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 – Dischargeability - § 523(a)(5), domestic support
☐ 68 – Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63 – Dischargeability - § 523(a)(8), student loan
☐ 64 – Dischargeability - § 523 (a)(15), divorce or separation obligation (other than domestic support)
☐ 65 – Dischargeability – other

**FRBP 7001(7) – Injunctive Relief**
☐ 71 – Injunctive relief – imposition of stay
☐ 72 – Injunctive relief – other

**FRBP 7001(8) – Subordination of Claim or Interest**
☐ 81 - Subordination of claim or interest

**FRBP 7001(9) – Declaratory Judgment**
☑ 91 – Declaratory judgment

**FRBP 7001(10) – Determination of Removed Action**
☐ 01 – Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa et seq.
☑ 02 – Other (e.g.,other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand: $ To Be Determined |

Other Relief Sought:

### BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | BANKRUPTCY CASE NO. | |
|---|---|---|
| CURTIS JAMES JACKSON, III | 15-21233 (AMN) | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| Connecticut | New Haven | Ann M. Nevins |

### RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| | | |
| DISTRICT IN WHICH ADVERSARY PROCEEDING IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| | | |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|
| / s / John L. Cesaroni | John L. Cesaroni |
| DATE | |
| September 12, 2017 | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet.  When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party.**  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | | |
|---|---|---|
| **IN RE:** § | **CHAPTER 11** |
| **CURTIS JAMES JACKSON, III** § | **CASE NO. 15-21233 (AMN)** |
| **DEBTOR.** § | |
| § | |
| **CURTIS JAMES JACKSON, III** § | |
| Plaintiff, § | |
| § | **ADVERSARY PROCEEDING** |
| v. § | **CASE NO.** |
| § | |
| **GSO BUSINESS MANAGEMENT LLC,** § | |
| **JONATHAN SCHWARTZ, MICHAEL** § | |
| **OPPENHEIM, BERNARD GUDVI, NICHOLAS** § | |
| **BROWN, and WILLIAM BRAUNSTEIN** | |
| Defendants. | |

**ADVERSARY PROCEEDING AGAINST GSO BUSINESS MANAGEMENT LLC, JONATHAN SCHWARTZ, MICHAEL OPPENHEIM, BERNARD GUDVI, NICHOLAS BROWN, and WILLIAM BRAUNSTEIN**

1. Curtis James Jackson, III ("Jackson" or the Plaintiff) the post-confirmation Debtor was discharged from the Chapter 11 proceedings on February 2, 2017, in the above-captioned bankruptcy case (the "Bankruptcy Case"), that was filed under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code"). Plaintiff files the within Adversary Proceeding asserting causes of action against GSO Business Management LLC, Jonathan Schwartz, Michael Oppenheim, Bernard Gudvi, Nicholas Brown, and William Braunstein (hereinafter referred to collectively as the "Defendants" or individually by last name) for affirmative monetary relief and damages, for his complaint against them as follows:

1

## INTRODUCTION

2. In 2013, Jackson retained GSO as his business managers and to maintain his personal and business accounting. A successful hip hop artist, entertainment industry icon, and business man, Jackson relied on GSO to safeguard his assets and protect his financial health. GSO in turn represented to Jackson that they diligently managed his finances, provided sound financial advice and acted in a manner to maintain and maximize his assets. However, as discussed *infra* Defendants failed to do so, and have caused Jackson to incur significant monetary damages.

3. Jackson filed for Chapter 11 bankruptcy in 2015. Despite being well aware of Jackson's filing for bankruptcy, GSO failed to make the requisite U.S.C § 1398(d)(2) election for Jackson, and failed to counsel Jackson in this regard. Consequently, Jackson was personally responsible for his personal tax liability for all of 2013, and was precluded from utilizing any of his carried-over Net Operating Losses ("NOL's") against any of his pre-petition income. Had GSO made the U.S.C. § 1398 election, Jackson would have been able to shift his pre-petition tax liability to the bankruptcy estate, after having utilized his NOL's against his pre-petition income. GSOs' failure to make this election constituted a breach of fiduciary duty, professional malpractice and negligence, and consequently cost Jackson hundreds of thousands of dollars.

4. Furthermore, GSO improperly "helped themselves" to approximately $90,000 of Jackson's money and paid itself for bankruptcy related services without prior Bankruptcy Court approval. This action improperly, and upon information and belief, intentionally circumvented the Bankruptcy Court's requirement of a fee petition. Therefore, GSO is

obliged to return any fees to Jackson that they received after Jackson filed for bankruptcy.

5. Lastly, GSO has failed to provide Jackson a thorough and forensic accounting to dispel the good faith belief that GSO and/or its partners or agents engaged in acts of malfeasance and other conduct detrimental to Jackson's financial well-being.

## JURISDICTION AND VENUE

6. Jackson is a resident of Connecticut. On July 13, 2015, Jackson filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, thereby initiating the Bankruptcy Case in the United States Bankruptcy Court for the District of Connecticut, Hartford Division. Under §301, the filing of the petition constituted an order for relief under Chapter 11 and, since that filing, under §§1107 and 1108, Jackson continued in possession and control of his assets and property, and continued to operate his businesses and manage his affairs.  On July 7, 2016, the Court entered its order confirming Jackson's *Third Amended Plan of Reorganization* (the "Plan"). Jackson filed a petition to be discharged from the Chapter 11 proceedings and the Court granted the discharge application on February 2, 2017 on Jackson's Discharge Petition. Defendants submitted to the jurisdiction of this Bankruptcy Court by the filing of an application to act as Jackson business manager during the pendency of the bankruptcy proceedings. This Court has jurisdiction over this matter under 28 U.S.C. Section 157, and 1334(b).

## THE PARTIES

7. That at all times hereinafter mentioned, Jackson is in individual residing in the State of Connecticut.

8. That at all times hereinafter mentioned, GSO was and still is a limited liability company duly organized and existing under and by virtue of the laws of the State of California with a principal place of business in Los Angeles, California.

9. That at all times hereinafter mentioned, GSO was and still is a limited liability company duly organized and existing under and by virtue of the laws of the State of California and conducting business in and with residents of and/or companies located within the State of Connecticut.

10. That at all times hereinafter mentioned, Jonathan Schwartz, Michael Oppenheim, Bernard Gudvi, Nicholas Brown, and William Braunstein are residents of the State of California and during the time of Jackson's representation by GSO, were owners, partners, managers and/or officers of GSO.

11. That at all times hereinafter mentioned, Jonathan Schwartz, Michael Oppenheim, Bernard Gudvi, Nicholas Brown, William Braunstein are residents of the State of California and during the time of Jackson's representation by GSO, were owners, partners, managers and/or officers of GSO conducting business in and with residents of and/or companies located within the State of Connecticut.

12. That at all times relevant hereto and in doing all that is alleged herein, each Defendant was an agent and/or employee of the other Defendants, acting within the scope of such agency or employment, directing ratifying or condoning the acts or omissions of the these Defendants alleged herein, and with the knowledge of any Defendant attributable to all Defendants, and Defendants conspired, condoned, acquiesced, and/or exhibited professional negligence, in furtherance of one another's conduct, and committing the actions as alleged herein, thereby making the actions of any Defendant attributable to all Defendants.

4

## ALLEGATIONS

13. GSO served as Jackson's business managers from 2013 to 2015. As Jackson's business managers, GSO were responsible for all financial and tax aspects of Jackson's business ventures, his artistry, and his income. GSO were responsible for ensuring Jackson's compensation and income were properly received, and they were charged with maintaining and safeguarding his bank and investment accounts. GSO further provided accounts payable services for Jackson, managed his investments and proposed budgets to maintain financial health. Jackson trusted and relied on GSO in managing his financial affairs and expected they would advise him on how to best handle matters involving his assets.

14. On July 13, 2015, Jackson filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, thereby initiating a Bankruptcy Case in the United States Bankruptcy Court for the District of Connecticut.[1] GSO, under a fiduciary duty to ensure Jackson's finances were handled properly and diligently protect his monetary interests, failed to make the proper IRC § 1398(d)(2)(A)[2] election on Jackson's behalf after Jackson filed for bankruptcy.

---

[1] Under §301, the filing of the petition constituted an order for relief under Chapter 11, and under §§1107 and 1108, Jackson continued in possession and control of his assets and property, and continued to operate his businesses and manage his affairs.  On July 7, 2016, the Court entered its order confirming Jackson's Third Amended Plan of Reorganization. Jackson filed a petition to be discharged from the Chapter 11 proceedings and the Court granted the discharge application on February 2, 2017 on Jackson's Discharge Petition.

[2] IRC § 1398(d)(2)(A) election: The general rule under § 1398(d) is that the taxable year of the debtor is unaffected by the debtor's filing for bankruptcy.  However, under (d)(2), the debtor can make an election to split his taxable year into two separate taxable years.  The first short taxable year ends on the date before the filing for bankruptcy (the day before the commencement date).  The second short taxable year begins on the commencement date.  By making this election to bifurcate his tax year, the debtor also bifurcates his tax liability.  Since the first short tax year ends on the day before the commencement date, all of the debtor's tax liability from that first short tax year is deemed prepetition debt, and is therefore transferred to the estate. Thereafter, for the short tax year running from the commencement date to the end of the year, all tax liability belongs solely to the debtor, not to the estate.

5

15. This prevented Jackson from applying carry-forward Net Operating Losses ("NOL"), and caused Jackson to incur approximately $200,000 in unnecessary taxes.[3] The liability may have been greater, and in order to address GSO's failure to make the proper election, Jackson was forced to hire an additional accounting firm, Cohn Resnik LLP, to review and correct Jackson's tax returns and mitigate his tax liability to approximately $200,000.

16. Consequently, Jackson was personally responsible for his personal tax liability for all of 2013, and was precluded from utilizing any of his carried-over NOL's against any of his pre-petition income. Had GSO made the § 1398 election, Jackson would have been able to shift his pre-petition tax liability to the bankruptcy estate, after having utilized his NOL's against his pre-petition income.

17. At no time did GSO advise or issue correspondence to Jackson indicating that there were tax consequences and/or deadlines to adhere to. The failure to make this election constitutes malpractice or professional negligence, and consequently cost Jackson hundreds of thousands of dollars. Had Jackson been properly advised by GSO regarding

---

[3] IRC § 1398 Treatment of Net Operating Losses: When the debtor files for bankruptcy, a bankruptcy estate is created. This bankruptcy estate is a separate taxable entity, and as such files its own tax return.[3] If the debtor remains in control of his assets during the bankruptcy, he is considered a "Debtor in Possession" ("DIP"). Under § 1398(g), the bankruptcy estate "steps into the shoes" of the debtor for several of the debtor's tax attributes, including Net Operating Loss carryovers. After the bankruptcy is concluded, the debtor's assets and tax attributes merge back into the debtor.

Furthermore, § 1398(j) sets specific rules for the utilization of NOL's: (a) any of the debtor's pre-petition NOL's transfer to the estate, and can be used only by the estate. The estate can use these pre-petition NOL's against prior income (any such refund is given to the estate), or against income generated by the estate. (b) NOL's created by the estate post-petition can be used by the estate to offset the estate's income, or can be carried back against pre-petition income (any such refund is given to the estate). (c) The debtor's post-petition NOL's belong only to the debtor, and as such cannot be carried back against the debtor's pre-petition income, but may subsequently be carried back against the debtor's post-petition income, but no earlier.

Interrelation of the Short-Tax-Year Election and Net Operating Losses: When the debtor makes the election for the short taxable year, there are two main effects: First, the debtor's pre-petition tax liability is transferred to the estate. Second, the debtor is able to use his pre-petition NOL's against his pre-petition income before the remaining NOL's (if any) are transferred to the estate. As a result, the debtor can reduce his taxable income by applying his NOL's, and can then transfer any remaining tax liability to the estate. If, on the other hand, the election is not made, the debtor retains his tax liability for the entire year during which the debtor files for bankruptcy, and the debtor is unable to utilize any of his NOL's against any of his pre-petition income.

the proper filing of his return at the time of filing Chapter 11 bankruptcy, Jackson would undoubtedly made the proper elections and thereby taken advantage of the NOL and saved approximately $200,000 in paid taxes.

18. In addition, GSO improperly "helped themselves" to Jackson's money and paid itself approximately $90,000 for bankruptcy related services without prior Court approval. GSO never filed a petition for professional fees for approval by the Bankruptcy Court in accordance with 11 U.S.C. § 331. This was unlawful, an affront to the Bankruptcy Court and also a breach of the fiduciary duty owed to Jackson. Jackson, now discharged from bankruptcy, contends herein that GSO is obliged to return any fees to Jackson that they received after Jackson filed for bankruptcy.

19. Lastly, GSO has failed to provide a proper and thorough accounting of their services and cash flow from Jackson's accounts during the time they were in control of the same. During this time period, it was discovered that GSO partner Jonathan Schwartz stole at least $4.8 million from the accounts of another music industry client, Alanis Morissette, a crime for which he has been convicted and sentenced. It has been reported that Schwartz may have taken money from other client accounts as well.

20. The failure to provide a proper accounting for Jackson's finances during the time they were employed by Jackson gives Jackson a good faith basis to believe that GSO may have likewise improperly handled Jackson's finances. In fact, Schwartz did work on the Jackson accounts as he submitted bills for work conducted for Jackson. To date, GSO has not provided a detailed and/or forensic accounting for the accounts handled for Jackson during the time they managed Jackson's finances. The absence of a forensic accounting to demonstrate that GSO and Schwartz did not engage in malfeasance in regard to the

7

Jackson accounts gives Jackson cause to believe and allege that GSO likewise misallocated his funds.

21. Upon information and belief, Jackson alleges that GSO's conduct fell below industry standards and that GSO did not perform its duty in a manner expected from a sophisticated certified public accounting and business management firm as they hold themselves out to be. If GSO were performing as required by professional and industry standards, and with the fiduciary duty and cared owed to Jackson, the incidents alleged above would not have occurred. GSO, its managing partners and/or agents are responsible for the breach of fiduciary duty, malpractice, negligence and deviation from the standard of care in their industry, and liable to Jackson for the damages he has incurred, including legal fees, that Jackson would not have incurred but for the negligence, malpractice, breach of fiduciary duty, and possible malfeasance, on the part of GSO and its partners, agents, and employees.

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR BREACH OF FIDUCIARY DUTY

22  Jackson repeats and reiterates each and every allegation contained in Paragraphs 1 through 21 as if set forth a length herein.

23  The GSO owed Jackson the fiduciary duties of good faith, trust, loyalty, and due care in their role as Jackson's business managers and financial accountants.

24  GSO were under a duty to act in the best interests of Jackson, and to put Jackson's interests above their own professional, personal, and monetary interests, so as to benefit Jackson, and not act in furtherance of their own professional, personal, and monetary interests to Jackson's detriment.

25. GSO's conduct and actions as detailed and alleged above constitutes a breach of the fiduciary duty owed to Jackson.

26. This breach of fiduciary duty is the direct and proximate cause of damages incurred by Jackson in an amount to be proven at trial, but clearly in excess of $200,000, plus interest thereon.

27. That, upon information and belief, GSO's actions constitute a breach of fiduciary duty and/or professional malpractice, that GSO committed acts of conversion and were unjustly enriched, that GSO acted with negligence and/or gross negligence, and/or possible malfeasance, and that therefore Jackson is entitled to compensatory damages, punitive damages, and compensation for all legal and professional fees incurred in this matter.

## AS AND FOR A SECOND CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY, CONVERSION AND UNJUST ENRICHMENT

28. Jackson repeats and reiterates each and every allegation contained in Paragraphs 1 through 27 as if set forth at length herein.

29. Upon information and belief, GSO wrongfully acquired approximately $90,000.00 of Jackson's funds, by issuing payment to themselves and engaging in self-dealing, in violation of the United States Bankruptcy Code, and to the detriment of Jackson.

30. Upon information and belief, GSO intentionally acquired said funds to the exclusion of Jackson's right of possession to said funds.

31. That in the taking of said funds, Defendants further breached their duty of care, duty of loyalty, and a duty of honesty, in their obligations to Jackson and the safeguarding and managing of his financial affairs.

32. That in the taking of said funds GSO benefitted at Jackson's expense and that equity and good conscience require restitution of the funds to Jackson in addition to any damages Jackson has incurred.

33. These acts of conversion, unjust enrichment and breach of fiduciary duty are the direct and proximate cause of damages incurred by Jackson in an amount to be proven at trial, and in excess of $90,000, plus interest thereon.

34. That, upon information and belief, GSO's actions constitute a breach of fiduciary duty and/or professional malpractice, that GSO committed acts of conversion and were unjustly enriched, that GSO acted with negligence and/or gross negligence, and/or possible malfeasance, and that therefore Jackson is entitled to compensatory damages, punitive damages, and compensation for all legal and professional fees incurred in this matter.

### AS AND FOR A THIRD CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY AND NEGLIGENCE

35. Jackson repeats and reiterates each and every allegation contained in Paragraphs 1 through 34 as if set forth at length herein.

36. The abovementioned conduct by the Defendants fell below the standard of care, and those of the industry, for a business management and/or accounting firm.

37. The abovementioned conduct constituted negligence and/or gross negligence by the Defendants.

38. That such negligence further breached GSO's duty of care, duty of loyalty, and a duty of honesty, in their obligations to Jackson and the safeguarding and managing of his financial affairs and failed to provide an accurate and true accounting to Plaintiff of all monies received and disbursed by Defendants on Jackson's behalf.

39. These acts of negligence and/or gross negligence are the direct and proximate cause of damages incurred by Jackson in an amount to be proven at trial, plus interest thereon.

40. That, upon information and belief, GSO's actions constitute a breach of fiduciary duty and/or professional malpractice, that GSO committed acts of conversion and were unjustly enriched, that GSO acted with negligence and/or gross negligence, and/or possible malfeasance, and that therefore Jackson is entitled to compensatory damages, punitive damages, and compensation for all legal and professional fees incurred in this matter.

**WHEREFORE,** the Plaintiff Jackson, respectfully seeks the following relief, (a) a money judgment awarding compensatory damages; (b) punitive damages; (c) attorney's fees; (d) costs; (e) a declaratory judgment to obtain an accounting by Defendants of all monies received and dispersed by Defendants in regard Jackson's accounts; (f) such other and further relief as to this Court may seem just and proper.

Dated: New York, New York
September 12, 2017

Respectfully submitted,

Baratta, Baratta & Aidala LLP
Joseph P. Baratta
Imran H. Ansari
546 Fifth Avenue
New York, NY 10036
(212) 750-9700

By: /s/ Joseph P. Baratta
    Joseph P. Baratta

By: /s/ Imran H. Ansari
    Imran H. Ansari

and

Zeisler & Zeisler, P.C.
James Berman
John L. Cesaroni
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Email: jberman@zeislaw.com
Tel: (203) 368-5480
Fax: (203) 367-9678

By: /s/  James Berman

By: /s/  John L. Cesaroni

Attorneys for Plaintiff Curtis J. Jackson, III

# VERIFICATION

STATE OF NEW YORK     )
                      :ss
COUNTY OF NEW YORK    )


      I, CURTIS JAMES JACKSON, III, being sworn, say: I am Plaintiff in the within action; I have read the foregoing Complaint against GSO Business Management LLC, et al, and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated be alleged upon information and belief, and as to those matters I believe it to be true.

                                      CURTIS JAMES JACKSON, III

Sworn to before me on
July 26, 2017

_____
Notary Public

Imran H. Ansari
Notary Public, State of New York
No. 02AN6225424
Qualified in New York County
Commission Expires July 10, 20 18
11/14