**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION**

| | | |
|---|---|---|
| IN RE:<br>    CURTIS JAMES JACKSON, III<br>        *Debtor* | : : : : : | CHAPTER 11<br><br>CASE NO.: 15-21233 (AMN) |
| CURTIS JAMES JACKSON, III<br>        *Plaintiff*<br><br>v.<br><br>GSO BUSINESS MANAGEMENT, LLC,<br>JONATHAN SCHWARTZ, MICHAEL<br>OPPENHEIM, BERNARD GUDVI,<br>NICHOLAS BROWN, and<br>WILLIAM BRAUNSTEIN<br>        *Defendants* | : : : : : : : : : : : : : | Adv. Proc. No. 17-02068 |
| GSO BUSINESS MANAGEMENT, LLC,<br>        *Third-Party Plaintiff*,<br><br>v.<br><br>BOULEVARD MANAGEMENT, INC.,<br>        *Third-Party Defendant.* | : : : : : : : : : : | AP-ECF No. 62[1] |

**MEMORANDUM OF DECISION
<u>DENYING SUMMARY JUDGMENT AS TO COUNT II OF THIRD-PARTY COMPLAINT</u>**

*Appearances*

| | |
|---|---|
| Imran H. Ansari, Esq.<br>Joseph P. Baratta, Esq.<br>Baratta, Baratta & Aidala, LLP<br>546 Fifth Avenue, 6th Floor<br>New York, NY 10036 | *Counsel for Curtis James Jackson, III,<br>Plaintiff* |

---

[1]    Citations to the docket in case number 15-21233 are noted by "ECF No." Citations to the docket of this adversary proceeding, number 17-02068, are noted by "AP-ECF No."

1

John L. Cesaroni, Esq.
James Berman, Esq.
Christopher H. Blau, Esq.
Zeisler and Zeisler
10 Middle Street, 15th Floor
Bridgeport, CT 06604

| | |
|---|---|
| Thomas K. McCraw, Esq.<br>Freeman, Mathis & Gary, LLP<br>60 State Street, Suite 600<br>Boston, MA 02109-1800 | *Counsel for GSO Business Management, LLC,*<br>*Defendant and Third-Party Plaintiff* |

Ilan Markus, Esq.
Barclay Damon LLP
545 Long Wharf Drive, 9th Floor
New Haven, CT 06511

| | |
|---|---|
| Robert W. Cassot, Esq.<br>Timothy J. Holzman, Esq.<br>Morrison Mahoney LLP<br>One Constitution Plaza, 10th Floor<br>Hartford, CT 06103 | *Counsel for Boulevard Management, Inc.*<br>*Third-Party Defendant* |

### I. INTRODUCTION

This case is about a missed deadline. As an individual Chapter 11 debtor, Curtis James Jackson, III (plaintiff, "Debtor", or "Mr. Jackson") could have made a short year tax election pursuant to Internal Revenue Code § 1398 ("IRC § 1398") on or before November 15, 2015 (the "Election Deadline"). 26 U.S.C. § 1398. That did not happen.

If the IRC § 1398 election had been made, Mr. Jackson could have shifted his tax liability for the first portion of the calendar year from January 1, 2015 through July 12, 2015, the day before he filed his Chapter 11 case, to his Chapter 11 bankruptcy estate – a separate taxpayer – as a priority claim. According to Mr. Jackson's complaint (the "Main Complaint"), he was harmed when the short year tax election for 2015 was not made.

By the Election Deadline, Mr. Jackson had fired one group of business consultants and accountants and hired another, but the transition was messy. An order authorizing

the employment of the fired group had entered months earlier.  An application to employ the replacement group with an effective date of November 1, 2015 was filed on November 3, 2015, and, after the Election Deadline, it was approved.  But neither the fired business consultant nor the replacement business consultant made the IRC § 1398 election and neither sought an extension of time.

After successful completion of a confirmed Chapter 11 plan of reorganization and having received a bankruptcy discharge in early 2017, Mr. Jackson then filed the Main Complaint against the fired group, only – defendant, GSO Business Management, LLC ("GSO") – alleging GSO was negligent because it missed the Election Deadline.  GSO, in turn, filed a third-party complaint against the group that replaced it – Boulevard Management, Inc. ("Boulevard") – seeking contribution and indemnification.  GSO alleged the responsibility for missing the Election Deadline belonged to Boulevard and not GSO.

Now, Boulevard seeks summary judgment as to Count II of the third-party complaint pursuant to Fed.R.Civ.P. 56, made applicable here through Fed.R.Bankr.P. 7056.[2]  ECF No. 62.  Because I conclude Boulevard failed to establish there are no material facts in dispute regarding GSO's claim for indemnification against Boulevard, the motion will be denied.

## II. **JURISDICTION**

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b), and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984.  This adversary

---

[2] During oral argument on August 18, 2020, GSO conceded that Count I (contribution) was not ripe and represented it would be withdrawing Count I without prejudice to reasserting the claim should GSO be found liable on the Main Complaint.

3

proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B).  This adversary proceeding arises under the Main Case pending in this District; therefore, venue in this District is proper pursuant to 28 U.S.C. § 1409.

### III. **RELEVANT PROCEDURAL HISTORY**

Familiarity with an earlier decision dismissing Counts III and IV of GSO's third-party complaint against Neligan LLP, the Debtor's Chapter 11 lawyers, is assumed.  AP-ECF No. 60.

### *Mr. Jackson's Bankruptcy Case*

On July 13, 2015, Mr. Jackson filed a voluntary petition under Chapter 11 of the Bankruptcy Code,[3] commencing case number 15-21233 (the "Main Case").  ECF No. 1.  Within the Main Case, Mr. Jackson sought and received authority to employ GSO as a professional, pursuant to 11 U.S.C. § 327, to "provide financial advisory and accounting services," effective as of July 19, 2015.  ECF Nos. 27 and 149.  Soon thereafter, in October 2015, Mr. Jackson fired GSO.  See, AP-ECF No. 137, ¶ 1, AP-ECF No. 136-1, ¶ 8.  On November 3, 2015, Mr. Jackson filed an application seeking authority to employ Boulevard to replace GSO as the professional entity providing "financial advisory and accounting services" to the bankruptcy estate, with an effective date of November 1, 2015.  ECF No. 220, p. 1 (the "Boulevard Application").  Two creditors and the United States Trustee filed objections to the Boulevard Application.  After the Debtor filed an amended application to address the objections, an order entered authorizing the Debtor to employ Boulevard effective November 1, 2015, pursuant to § 327.  ECF Nos. 220, 233, 236, 252, 293, 334.

---

[3]   The Bankruptcy Code is found at Title 11, United States Code.  Unless otherwise stated, references to code sections are to the Bankruptcy Code.

During the Chapter 11 proceedings, Boulevard filed two applications for allowance of compensation for services rendered pursuant to § 330; orders approving them entered after notice and a hearing. ECF Nos. 457, 514, 604, 652. GSO did not file an application for compensation and no compensation for GSO was allowed pursuant to § 330. *See also,* ECF No. 182 (Order Pursuant to 11 U.S.C. §§ 105(A) and 331 Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals).

As noted earlier, the Debtor successfully completed a confirmed Chapter 11 plan of reorganization and received a bankruptcy discharge in early 2017. ECF Nos. 552, 764.

### *Jackson v. GSO Adversary Proceeding*

Thereafter, on September 12, 2017, Mr. Jackson commenced this adversary proceeding against GSO seeking damages due to GSO's alleged failure to make a tax election on his behalf or on behalf of his Chapter 11 estate, causing harm, and from alleged wrongful payments by GSO to itself for fees during the pendency of the Chapter 11 bankruptcy case without obtaining bankruptcy court approval. AP-ECF No. 1.

### *GSO v. Boulevard Third-Party Complaint*

On December 22, 2017, GSO filed a third-party complaint against Boulevard and Neligan, LLP (the "GSO v. Boulevard Complaint").[4] AP-ECF No. 21. In the GSO v. Boulevard Complaint, GSO asserted claims for contribution and indemnification against Boulevard in Counts I and II and similarly against Neligan in Counts III and IV.[5] AP-ECF No. 21. In Count II, GSO asserted that to the extent GSO is liable to Mr. Jackson on his

---

[4] Neligan LLP ("Neligan") is a limited liability partnership acting as Mr. Jackson's primary counsel during his Chapter 11 bankruptcy case. Neligan assisted Mr. Jackson's non-attorney professionals, including GSO, to become court-approved professionals. AP-ECF 21.
[5] Neligan sought dismissal of Counts III and IV, which was granted in June 2018. AP-EFC No. 60. As noted earlier, GSO represented Count I against Boulevard would be withdrawn without prejudice.

5

claim that GSO failed to make a timely tax election, Boulevard must indemnify GSO because Boulevard replaced GSO as Mr. Jackson's accountant before the deadline for making the tax election. Boulevard filed an answer including affirmative defenses on March 12, 2018. AP-ECF No. 45.

### *Boulevard's Motion for Summary Judgment*

Boulevard filed the instant motion for summary judgment, but the court directed all parties to participate in mediation. AP-ECF Nos. 62, 63, 98. After it was reported the mediation effort failed, the court scheduled oral argument on the pending motion for summary judgment. AP-ECF Nos. 126, 130.

Because GSO has since conceded it cannot establish the elements necessary to claim Count I at this time, this Memorandum of Decision addresses only Count II. Boulevard asserted no reasonable factfinder could conclude that Boulevard had control of the situation to the exclusion of GSO, and therefore it is entitled to judgment on Count II. *See*, AP-ECF No. 63, P. 2. GSO objected. AP-ECF No. 136. Oral argument was held on August 18, 2020.

### IV.   **FINDINGS OF FACT**

On October 13, 2015, Mr. Jackson terminated GSO as his business manager. AP-ECF No. 135, ¶ 1; AP-ECF No. 137, ¶ 1. Mr. Jackson sought a court order authorizing employment of Boulevard effective on November 1, 2015 to succeed GSO as his business manager and accountant, and to provide similar services to what GSO had been providing. ECF No. 293.

Following its November 1, 2015 employment date, Boulevard sought to obtain Mr. Jackson's financial documents from GSO. AP-ECF No. 135, ¶ 5; AP-ECF No. 137, ¶ 5. Boulevard and GSO disagree as to the particulars of the transfer of files, and particularly

tax and tax return information, from GSO to Boulevard in the interim between November 1, 2015 (Boulevard's effective employment date) and November 15, 2015 (the Election Deadline).  *See, generally,* AP-ECF Nos. 135, 137.

GSO did not inform Boulevard that the Election Deadline was approaching or that making the election was financially advantageous.  AP-ECF No. 135, ¶ 13; AP-ECF No. 137, ¶ 13.  Neither GSO nor Boulevard filed an extension request regarding the IRC § 1398 election.  Neither GSO nor Boulevard filed an IRC § 1398 election for the bankruptcy estate or for Mr. Jackson.

V.  **APPLICABLE LAW**

  a. **Summary Judgment Standard**

A court should grant a motion for summary judgment if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Coyle v. United* States, 954 F.3d 146, 148 (2d Cir. 2020).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Royal Crown Day Care LLC v. Department of Health and Mental Hygiene of City of New* York, 746 F.3d 538, 544 (2d Cir. 2014) (*quoting, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Because the burden of proof is on the moving party, the court must "draw all factual inferences and resolve all ambiguities in favor of the non-moving party."  *Coyle*, 954 F.3d at 148.

  b. **§ 1398 Short Year Election**

Section 1398 of the Internal Revenue Code helps to further bankruptcy's goal of giving the debtor a fresh start by allowing a Chapter 7 or Chapter 11 "debtor to bifurcate his tax year into prepetition and postpetition" short years.  *In re Haedo*, 211 B.R. 149, 151-52 (Bankr.S.D.N.Y. 1997); 26 U.S.C. § 1398.  The first short year "ends the day

before the commencement of the [bankruptcy] case, [ ] the second begins on the petition date, [ ] and the debtor must file two separate returns for separate parts of the same calendar year." *In re Haedo*, 211 B.R. at 152 (*citing* 26 U.S.C. § 1398).

The IRC § 1398 short year election is available only to individual Chapter 7 or individual Chapter 11 debtors. *In re Prativadi*, 281 B.R. 816, 820 (Bankr.W.D.N.Y. 2002). An individual debtor must affirmatively make the election on or before the 15th day of the 4th month after the commencement of the debtor's bankruptcy case. *In re Haedo*, 211 B.R. at 152 (*citing* 26 U.S.C. § 1398); *See also*, 26 U.S.C. § 6072(a). Here, the bankruptcy case commenced on July 13, 2015 (the "Petition Date") and the Election Deadline thus became November 15, 2015.

If a debtor makes the IRC § 1398 short year election, then the tax liability attributable to the first short year, or the prepetition year, becomes a priority claim against the bankruptcy estate. *In re Haedo*, 211 B.R. at 152 (*citing In re Johnson*, 190 B.R. 724, 726 (Bankr.D.Mass. 1995); *In re Moore*, 132 B.R. 533, 534-35 (Bankr.W.D.Pa. 1991); *In re Mirman*, 98 B.R. 742, 745 (Bankr.E.D.Va. 1989); *In re Turboff*, 93 B.R. 523, 525 (Bankr.S.D.Tex. 1988)). In most cases, it is financially advantageous for a debtor to make this election. Jack F. Williams, *Tax Aspects of Bankruptcy Law* §20:22, 3d ed. (2020)("Whether a debtor should make the IRC § 1398 election depends on the particular facts and circumstances at hand. As a general rule, it appears that in most cases the election should be made. By making the election, a debtor is able to shift at least some of the tax liability to the estate as an allowable Bankruptcy Code § 507(a)(8) priority claim. However, if the claim is not satisfied it will remain nondischargeable and survive the bankruptcy.").

If a debtor does not timely make the IRC § 1398 short year election, "no portion of the debtor's pre-petition income tax liability for the year ending after the filing of the petition can be assessed or claimed against that debtor's asset bankruptcy estate." *In re Prativadi*, 281 B.R. at 819. In that event, the tax liability for the entire year can only be assessed against the individual debtor. *In re Haedo*, 211 B.R. at 152.

### c. Common Law Indemnification Standard & Ripeness

Generally, a claim for indemnification is not ripe for adjudication when there has not yet been a recovery in the underlying case. *See, Holiday Hill Mgt. Co. v. Transport Workers Loc. 100-Retirees*, CV116023778S, 2014 WL 660406, at *6 (Conn. Super. Ct. Jan. 17, 2014) (*citing, Connecticut Attorneys Title Ins. Co. v. McDonough*, Docket No. CV–93–0530925, 18 Conn. L. Rptr. 337, 344 (Conn. Super. Ct. December 4, 1996) (a claim of indemnification arises either when liability is incurred or upon a "determination by payment under a valid claim of right.")); *Wilkins v. Fox*, No. CV95 547145, 1995 WL 384614, at *1, 1995 Conn. Super. LEXIS 1852, at *2 (Conn. Super. Ct. June 21, 1995) ("common law indemnification does not accrue until a final judgment is rendered in the primary action.") (*citing, McEvoy v. Waterbury*, 104 A. 164, 165 (1918)). However, the exception to this rule is that Connecticut law allows a defendant to implead a third-party for the purpose of bringing indemnification claims in the underlying lawsuit, even before any recovery has been made against the defendant. *See, Philadelphia Indem. Ins. Co. v. U.S.*, 3:13-CV-00987-VLB, 2014 WL 12754997, at *3 (D. Conn. Sept. 30, 2014); Conn Gen. Stat. § 52-102a(a) (allowing defendants to implead third parties). "This exception recognizes the potential efficiency and cost savings that may be achieved by resolving the underlying claims and the indemnification claims all in one action." *Philadelphia Indem. Ins. Co. v. U.S.*, 3:13-CV-00987-VLB, 2014 WL 12754997, at *3 (*citing, Simkins

*Indus., Inc. v. Marsh USA, Inc.*, No. X01CV010166142, 2001 WL 1004221, at *2, 2001 Conn. Super. LEXIS 2202, at *7 (Conn. Super. Ct. Aug. 7, 2001) (noting Conn. Gen. Stat. § 52-102a allows a defendant to implead a third party on an indemnification claim even before anything has been recovered from the defendant).

Under Connecticut common law, a party seeking indemnification against a third party must establish four elements:

> (1)   the third party against whom indemnification is sought was negligent;
>
> (2)   the third party's active negligence . . . was the direct, immediate cause of the accident and the resulting harm;
>
> (3)   the third party was in control of the situation to the exclusion of the defendant seeking reimbursement; and
>
> (4)   the defendant did not know of the third party's negligence, had no reason to    anticipate it, and reasonably could rely on the third party to not be negligent.
>
> *Valente v. Securitas Security Services, USA, Inc.*, 152 Conn.App. 196, 204 (2014) (*quoting Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405 (1965)).

### *(i)   Elements (1) and (2)*

When analyzing elements (1) and (2) — that the third-party was negligent and that the active negligence was the direct cause of the harm — Connecticut courts look to the actions of *both* the party seeking indemnification and the third party against whom indemnification is sought. *City of Bristol v. Dickau Bus Co., Inc.*, 63 Conn.App. 770, 775-76 (2001). In *Pellecchia v. Connecticut Light and Power Co.*, the Connecticut Appellate Court summarized the way traditional notions of negligence apply to common law indemnification by saying, "where two parties with independent duties to exercise reasonable care for the safety of another person separately breach those duties … equity permits the shifting of all responsibility … to the party who, by virtue of its control of the

dangerous condition to the exclusion of the other negligent party, was the direct and immediate cause of the accident." *Pellecchia v. Connecticut Light and Power Co.*, 139 Conn.App. 767, 777 (2012). In other words, a party seeking indemnification is not precluded from recovering under common law indemnification so "long as [that party was] chargeable with *some* negligence … and as long as that negligence was not active or primary." *City of Bristol*, 63 Conn.App. at 775-76. In comparison, the third-party must have been both negligent and that negligence must be the active or primary cause of the harm. *City of Bristol*, 63 Conn.App. at 775.

> ***(ii)    Element (3) and (4) – Whether the Third Party was in Control of the Situation to the Exclusion of the Party Seeking Indemnification and Whether the Party had Reason to Anticipate the Third Party's Negligence.***

In *Skuzinski v. Bouchard Fuels, Inc.*, the Connecticut Supreme Court held that exclusive control over the situation can be generally defined as "exclusive control over the dangerous condition that gives rise to the accident." *Skuzinski v. Bouchard Fuels, Inc.,* 240 Conn. 694, 706 (1997). Whether a party had exclusive control over the situation is generally a question of fact and in "special circumstances . . . [a] question of whether, in light of the facts alleged in the third-party complaint, any reasonable [factfinder] could find that the third party defendants had exclusive control of the situation." *Pellecchia*, 139 Conn.App. at 775.

In *Valente v. Securitas Security Services,* the Connecticut Appellate Court used a two-step analysis to determine control:

(1) Identification of the situation that caused the injury; and,

(2) "whether a reasonable juror could have found that [the third-party] exercised exclusive control over that dangerous condition."
*Valente*, 152 Conn.App. at 207.

11

The situation over which the third-party would need to have control over to the exclusion of others is the "condition of danger from which a foreseeable risk of harm to the [plaintiff] is claimed to have arisen." *Pellecchia*, 139 Conn.App. at 775. The burden of proof for this element of common law indemnification is on the party seeking indemnification to prove that the third-party was then in control to the exclusion of the plaintiff not for the third-party to disprove that fact." *Kaplan*, 152 Conn. at 418.

In analyzing element (4) — that the injured party did not know and had no reason to anticipate the third party's negligence — Connecticut courts place the burden on the party seeking indemnification to show that it did not know and could not have anticipated the third-party's negligence. *Gianquitti v. Sheppard*, 53 Conn.App. 72, 79 (1999). The party seeking indemnification must put forth evidence to support this claim. *Gianquitti*, 53 Conn.App. at 79.

## VI.    DISCUSSION

In support of summary judgment, Boulevard argues GSO cannot prevail on its common-law indemnification claim for negligence as a matter of law and there is no basis for the claim to proceed to trial. However, Boulevard's assertions regarding a common-law indemnification claim fail to take into account the exception described in *Pellecchia*, and, Boulevard failed to meet its burden to show there are no material facts in dispute when the *Pellecchia* exception is taken into account. Importantly, the court is unpersuaded, after drawing all factual inferences in favor of the non-moving party, that GSO would be unable to prove that Boulevard was actively negligent for failing to make the § 1398 election, and, that GSO would be unable to prove that Boulevard had exclusive control of the situation on the Election Deadline.

### I. Element (1) – Whether Boulevard Was Negligent

Boulevard argues there are only two possibilities here, and under either Boulevard cannot be required to indemnify GSO. First, Boulevard argues, if GSO prevails in the case brought by Mr. Jackson and is therefore not found to have been negligent, then GSO has no indemnification claim against Boulevard. The court agrees.

Second, Boulevard argues that if GSO is found to have been negligent, then GSO may not turn around and claim that Boulevard was negligent. Thus, Boulevard argues, there is no viable indemnification claim against Boulevard regardless of the outcome of the main claim by Mr. Jackson against GSO. With this the court disagrees.

The first element of a common law indemnification claim looks to the actions of both the party seeking indemnification and the third-party defendant, and the duties each held to the injured party, here Mr. Jackson. The principal issue in this summary judgment is whether one of two unrelated tortfeasors, whose separate and independent acts of alleged negligence – with each alleging the other permitted the Election Deadline to pass without either making an election or seeking an extension – may seek indemnification from the other on the common-law theory of active-passive negligence. Boulevard believes it is entitled to summary judgment because it is logically inconsistent for Mr. Jackson to prevail against GSO and GSO to also prevail against Boulevard. From Boulevard's perspective, a factfinder's conclusion that GSO was negligent precludes the factfinder from also finding Boulevard negligent. Boulevard's argument depends on the assumption that only one entity could be negligent for failing to file the § 1398 election. But, the court is unpersuaded this is the applicable law.

Boulevard's theory is similar to an argument rejected by the Connecticut Appellate Court in *Pellecchia v. Connecticut Light and Power Co.*, 139 Conn.App. 767 (2012). In

*Pellecchia*, the third-party defendant contended the independence of the defendant's alleged negligence from its own made it impossible for the defendant to prove two essential elements of common-law indemnification, to wit: that the defendant's negligence was passive instead of active and that the third-party was in control of the situation that caused the dangerous situation.  The third-party asserted that, if the defendant's independent negligence was a proximate cause of the harm to the plaintiff, it must have been a form of active, rather than passive, negligence, for its causative effects would necessarily have remained in operation until the setting in motion of the final active injurious force that immediately produced or preceded such harm.  In addition, it argued that the defendant's allegedly separate negligent contribution to the causation of the harm to the plaintiff was irreconcilably inconsistent with the notion that the third-party, by its own independent acts of negligence, was in control of the situation that caused the harm to the exclusion of the defendant. *Pellechia*, 139 Conn.App. at 773-774.

The *Pellechia* court declined to agree with the third-party, concluding the Connecticut Supreme Court's 1965 decision in *Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405 (1965), and its progeny, stand for the proposition that, where two parties with independent duties to exercise reasonable care for the safety of another person separately breach those duties in ways that cause harm to the other person by exposing him to one and the same dangerous condition, equity permits the shifting of all responsibility for the injured person's resulting damages to the party who, by virtue of its control of the dangerous condition to the exclusion of the other negligent party, was the direct and immediate cause of the accident. *Pellecchia v. Connecticut Light and Power Co.*, 139 Conn.App. at 777.

The Connecticut Supreme Court noted in *Kaplan* that there is an implied obligation of indemnity on a tortfeasor whose active negligence is primarily responsible for a plaintiff's injuries, thus superseding the indemnitee's passive negligence. *Kaplan*, 152 Conn. at 415-416. The term "superseding" describes "the fact that active negligence displaces passive negligence, which results in the shifting of the impact of liability between joint tortfeasors." *Pellecchia v. Connecticut Light and Power Co.*, 139 Conn.App. at 778, fn. 1.

Here, GSO and Boulevard owed independent duties to Mr. Jackson to exercise reasonable care as professionals employed by him, and both GSO and Boulevard could separately breach those duties. *See*, *Chicago Title Ins. Co. v. Accurate Title Searches, Inc.*, 173 Conn.App. 463, 694 (2017) (*citing City of Bristol v. Dickau Bus Co., Inc.*, 63 Conn.App. at 775–76 (holding that "[a]s long as the plaintiffs were chargeable with some negligence ... and as long as that negligence was not active or primary ... the plaintiffs are not precluded from recovering under common-law indemnification")). Based upon Connecticut precedent, the court declines to adopt Boulevard's argument and concludes that GSO is not precluded from pursuing a common law indemnification claim.

Boulevard also relies heavily on the sloppy or delayed transfer of tax and tax return information from GSO to argue that because it did not have access to Mr. Jackson's tax returns before the Election Deadline, it was not negligent. AP-ECF No. 63, P. 3. This argument fails to consider the other option that was present: requesting an extension of the Election Deadline. All Boulevard needed to know and act on to avoid missing the Election Deadline was the Petition Date. At this stage of the adversary proceeding, it is possible that Boulevard could be found actively, primarily negligent, and in control of the situation.

15

**II.     Element (2) – If Boulevard was negligent, whether its negligence the direct, immediate cause of Mr. Jackson's harm.**

For many of the same reasons, that I cannot yet conclude Boulevard was or was not negligent, I cannot yet determine whether any such negligence could be found to have been the direct and immediate cause of Mr. Jackson's harm. Mr. Jackson's alleged harm resulted from a failure of anyone to timely make an IRC § 1398 election. The record presently is insufficient to conclude that only GSO had the level of control on or before the Election Deadline to either seek an extension of time or to make the IRC § 1398 election.

Boulevard again relies heavily on GSO's failure to transfer Mr. Jackson's tax returns to Boulevard before the Election Deadline. But, based on the present record, this argument fails in light of the option to seek an extension of the Election Deadline.

**III.    Element (3) – If Boulevard was negligent and was the direct and proximate cause of the alleged harm, whether Boulevard was in control of the situation to the exclusion of GSO.**

The third element makes use of a two-part analysis: (1) identification of the situation that caused the harm; and, (2) whether a reasonable factfinder could find that Boulevard exercised exclusive control over that situation. Here, the situation is the passage of the Election Deadline with no action being taken on Mr. Jackson's behalf.

Based on the present record, a reasonable factfinder might find that Boulevard had exclusive control over the situation. Review of the Rule 56(a) and Rule 56(b) statements by the parties filed as AP-ECF Nos. 135 and 137 demonstrates there are material facts regarding a determination of exclusive control of the situation that are disputed. Some of the material facts that appear disputed include the actual date on which GSO's employment terminated. It is unclear from the record whether GSO's employment

terminated effective October 13, 2015, the date of Mr. Jackson's letter to GSO, or, on October 30, 2015, the date people at Boulevard told people at GSO would be a "cut-off date", or, on some other date.

While Boulevard argues it had *no control* of the situation because it did not have access to Mr. Jackson's tax returns, the court is unpersuaded that the lack of records equates to a lack of exclusive control. Boulevard did not need Mr. Jackson's tax returns in order to satisfy its duty to Mr. Jackson because this duty could have been satisfied by requesting an extension. Based on the present record, it is not possible to conclude that Boulevard did not meet this third element – that it did not have exclusive control of the situation on the Election Deadline – and so summary judgment may not enter.

**IV.    Element (4) – If Boulevard was negligent and was the direct and proximate cause of the alleged harm, and had exclusive control, whether GSO had no reason to anticipate the Boulevard's negligence.**

Turning to the fourth element, Boulevard would need to establish that GSO might have anticipated Boulevard's alleged negligence and therefore could not reasonably rely on Boulevard to not be negligent. The present record does not provide sufficient information from which to conclude whether GSO might have anticipated Boulevard's alleged negligence.

While Boulevard argues GSO's knowledge that Boulevard did not have access to Mr. Jackson's tax returns would lead GSO to anticipate that Boulevard would act negligently, this is uncertain. Boulevard was employed by Mr. Jackson to perform the same services that GSO had been providing. It is plausible that GSO reasonably relied on the fact that a professional company similar to itself would have known of deadlines like an IRC § 1398 election deadline for individual Chapter 11 debtors, and the implications of missing that deadline.

## V.     **CONCLUSION**

The summary judgment standard carries with it a hefty burden of proof on the moving party; one that Boulevard ultimately fails to meet.  While GSO bears the burden to establish the four elements of indemnification at an eventual trial, Boulevard bears the burden at this summary judgment stage to establish that GSO could not do so based on undisputed facts in the present record.  Because Boulevard did not meet that burden here, the motion for summary judgment, ECF No. 62, must be denied.

I have considered all other arguments made in the motion, supporting memoranda and during oral argument and find them to be without merit

ACCORDINGLY, it is hereby

ORDERED:  Boulevard Management, Inc.'s Motion for Summary Judgment as to Count II of the Third-Party Complaint, ECF No. 62, is DENIED; and it is further

ORDERED:  GSO Business Management, LLC shall file the withdrawal of Count I of the Third-Party Complaint on or before September 11, 2020.

Dated this 27th day of August, 2020, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut