**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | |
|---|---|
| In Re: | CHAPTER 11 |
| CURTIS JAMES JACKSON, III, | CASE NO. 15-21233 (AMN) |
| Debtor. | |
| Plaintiff, | ADVERSARY PROCEEDING |
| v. | CASE NO. 17-02068 (AMN) |
| GSO BUSINESS MANAGEMENT, LLC, JONATHAN SCHWARTZ, MICHAEL OPPENHEIM, NICHOLAS BROWN, BERNARD GUDVI, and WILLIAM BRAUNSTEIN | September 10, 2021 |
| Defendants. | |
| GSO BUSINESS MANAGEMENT, LLC, | |
| Third-Party Plaintiff, | |
| v. | |
| BOULEVARD MANAGEMENT, INC., | |
| Third-Party Defendants. | |

**CURTIS JAMES JACKSON, III'S POST-TRIAL BRIEF**
**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR JUDGMENT ON PARTIAL FINDINGS**

1

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL BACKGROUND ........................................................................... 2

I.    JACKSON IS ENTITLED TO JUDGMENT ON PARTIAL FINDINGS
BECAUSE GSO HAS FAILED TO SUSTAIN ITS BURDEN OF PROVING
THEIR AFFIRMATIVE DEFENSES WITH RESPECT TO ITS SELF-
PAYMENT OF $178,692.51 WITHOUT COURT APPROVAL AND IN
VIOLATION OF THE COURT ORDER ...................................................... 3

   A. The Defendants Admit that They Owed Jackson a Duty of Fiduciary Care ............ 5

   B. The Defendants Concede that Violating this Court's Orders Would Have
Constituted Their Breach of Fiduciary Duty to Jackson and Would Warrant
Returning Jackson's Money that was Taken by Them ........................................... 7

   C. Unrebutted Evidence in the Record Establishes Jackson's Claims that the GSO
Defendant's Self-Payment of the $178,692.51 Violated this Court's Orders ........ 8

      1. The Record Establishes that the GSO Retention Order Did Not
Authorize Defendants to Pay Themselves on its Face .................................... 8

      2. The Record Establishes that Neither Jackson's Creditors nor the U.S.
Trustee Understood the GSO Retention Order to Allow the Defendants
to Pay Themselves Without Filing Fee Applications .................................... 9

      3. Defendants Have Failed to Produce Evidence Establishing that the
Alleged Bankruptcy Fees and Expenses Were Taken from Jackson's
Accounts in Conformity with this Court's Orders ........................................ 13

      4. The Evidence in the Record Undercuts the GSO Defendant's Assertion that
they "Reasonably Believed" they Could Pay Themselves the $90,000 in
Alleged Retainer Fees from Jackson's G-Unit Account ............................... 14

   D. Unrebutted Evidence in the Record Establishes Jackson Damages Attributable
to the GSO Defendant's Breach of Fiduciary Duty in Paying Themselves
Wrongfully and Unlawfully from His Accounts ...................................................... 16

   E. The Record Establishes the Parties' Understanding that GSO's Exercise of
Fiduciary Care was an Inherent and Necessary ....................................................... 16

   F. The Court Should Enter an Order Requiring the Defendants to Disgorge the
$178,692.51 Taken from Jackson, Compensate Jackson for Legal Fees in this
Action, and award Punitive Damages ....................................................................... 18

CONCLUSION ............................................................................................... 20

## TABLE OF CASES

Page

*Desiderio v. Celebrity Cruise Lines, Inc*., 1999 WL 440775, *19 (S.D.N.Y. June 28, 1999).    5

*In re Alletto*, No. 07 30636 ASD, 2010 WL 5124721, at *2 (Bankr. D. Conn. Dec. 8, 2010)    18

*In re Count Liberty*, LLC, 370 B.R. 259, (Bankr. C.D. Cal. 2007)........................................    19

*In re Haemmerle*, 529 B.R. 17, 29 (Bankr. E.D.N.Y. 2015).................................................    19

*In re Howard Ave. Station*, L.L.C., 568 B.R. 146 (Bankr. M.D. Fla. 2017).........................    18

*In re Miszko*, 627 B.R. 809, 816 (Bankr. S.D.N.Y. 2021) ....................................................    19

*In re Nassoko*, 405 B.R. 515, 520 (Bankr. S.D.N.Y. 2009)..................................................    20

*In re Resource Tech., Corp*., No. 08 C 4235, 2008 WL 4696073 (N.D. Ill. Oct. 20, 2008)....    18

*In re Sanchez*, 941 F.3d 625, 628 (2d Cir. 2019)..................................................................    19

*In re Velo Holdings Inc*., 500 B.R. 693, 700 (Bankr. S.D.N.Y. 2013) ................................    19

*In re: Allou Distributors, Inc*., 392 B.R. 24, 29 (Bankr. E.D.N.Y. 2008) ........................    4,5

*In re: Regency Holdings (Cayman), Inc*., 216 B.R. 371, 374 (Bankr. S.D.N.Y. 1998)....    5

*Matis v. United States*, 236 B.R. 562, 569 (E.D.N.Y. 1999)................................................    5

*Wechsler v. Hunt Health Systems, Ltd*., 330 F. Supp. 2d 383, 433 (S.D.N.Y. 2004).........    5

## TABLE OF AUTHORITIES

Page

FRBP 7052(c) ............................................................................................................... *Passim*

11 USC § 105(a) ...........................................................................................................    19

11 USC § 327 ...............................................................................................................    12

11 USC § 330 ...............................................................................................................    12

11 USC § 330(a) ...........................................................................................................    9

11 USC § 331 .............................................................................................................. *Passim*

Fed. R. Civ. P. 52, 1991 Advisory Committee Notes ................................................    5

FRBP 7052 ................................................................................................................. *Passim*

FRCP 52 ......................................................................................................................    4

FRCP 52(c) ..................................................................................................................    5

Moore's Federal Practice 3d § 52.50[3] .....................................................................    4

## PRELIMINARY STATEMENT

Plaintiff Curtis James Jackson, III ("Jackson"), by and through his undersigned counsel, submits the within Post-Trial Brief and Memorandum of Law in support of his Motion for Judgment on Partial Findings (the "Partial Judgment Motion") pursuant to Rule 7052(c) of the Federal Rules of Bankruptcy Procedure ("FRBP 7052") on the grounds that the Defendants GSO Business Management, LLC ("GSO") and Michael Oppenheim ("Oppenheim") (collectively referred to as the "Defendants") have presented their evidence in the trial in this matter and have failed to carry their burden of proving certain of their affirmative defenses with respect to the issue of their wrongful taking of $178,692.51 from Jackson's bank accounts (debtor in possession ("DIP") and G-Unit accounts) in violation of an order of this Court during the pendency of his Chapter XI bankruptcy. For the reasons set forth below, Jackson respectfully requests that the Court enter an Order and Judgment: (a) dismissing the Defendants' Affirmative Defenses in total, including the Fourth, Sixth, Seventh, Eighth and Ninth Affirmative Defenses in this action; and (b) finding for Jackson on his claims that GSO improperly paid itself without permission, and finding that:

i.   the Defendants breached a duty of care they owed to Jackson in taking the $178,692.51 from his accounts in violation of the September 15, 2015 Retention Order issued by this Court (ECF 149) during the pendency of his bankruptcy;

ii.  the Defendants were negligent in their performance of post-petition services they allegedly rendered to Jackson;

iii. Jackson was damaged as a result of the Defendant's acts and/or omissions in taking the $178,692.51 from his accounts post-petition; and

iv.  the Defendants' acts and/or omissions in improperly taking the $178,692.51 from Jackson's accounts post-petition were the proximate cause of the damages Jackson sustained by reason of the Defendants' taking of the $178,692.51 from his accounts while he was in bankruptcy.

Jackson further respectfully requests that the Court require the Defendants to disgorge the full $178,692.51 plus interest it took from Jackson and to compensate Jackson for the legal fees

and expenses he has been forced to incur pursuing this action and for punitive damages as a result of Defendants' knowing violation of the Retention Order and subsequent express refusal to repay the funds that were improperly taken by Defendants, and for such other and further relief as the Court deems just and proper. Furthermore, Jackson respectfully requests that the Court render decision in his favor on his 1398 tax election claims against the Defendants, based on the trial record, including forthcoming summation/oral argument, and the arguments set forth in his Opposition to Defendants' and Third-Party Defendants' Joint Motion Pursuant to FRBP 7052 for Judgment on Partial Findings filed on this date.

## **FACTUAL BACKGROUND**

As a result of the trial in this case, the Court is familiar with the allegations forming the basis of the instant action and, to that end, incorporates the trial record, items contained on the docket of which the Court may take judicial notice, and the proposed Findings of Fact and Conclusions of Law that were filed in this matter on July 9, 2021 (AP-ECF No. 241) as if set forth fully herein. Jackson further incorporates the arguments in support of his claims, including those based on Defendants' failure to make a 1398 tax election, and failure to timely provide Boulevard with the information and materials needed to do so, as set forth in his Opposition to Defendants' and Third-Party Defendants' Joint Motion Pursuant to FRBP 7052 for Judgment on Partial Findings filed on this date. Jackson claims, *inter alia*, that the Defendants breached their fiduciary duty to Jackson by knowingly and unlawfully paying themselves sums from Jackson's bank accounts for retainer fees and expenses during the pendency of Jackson's bankruptcy pursuant to their post-petition retention by Jackson as his financial managers. *See generally* Jackson's Complaint (AP-ECF No. 1) ¶¶ 13, 18, 21-40.

The Defendants answered Jackson's Complaint by denials of the allegations in the Complaint and a series of, among other things, interposing Affirmative Defenses to his claims. Defendants have failed to meet their burden as to any Affirmative Defense, as such all should be dismissed, and in particular, the Defendants have failed to prove the following:

(a)     as a Fourth Affirmative Defense, "The [Defendants'] actions were not the proximate cause of the Plaintiff's alleged damages;"

(b)     as a Sixth Affirmative Defense, "The [Defendants] at all times relevant hereto acted in accordance with the applicable standard of care under the circumstances;"

(c)     as a Seventh Affirmative Defense, "The [Defendants] deny that they breached any duty of care allegedly owed to the Plaintiff;"

(d)     as an Eighth Affirmative Defense, "The [Defendants] deny that they were negligent in their performance of services to the Plaintiff;" and

(e)     as a Ninth Affirmative Defense, "The [Defendants] deny that the Plaintiff was damaged as a result of any act or omission by the Defendants as alleged in the Complaint." *See* GSO's Answer (AP-ECF No. 10) at 10

The Defendants have not sustained the burden proof at trial with respect to the Affirmative Defenses stated herein as related to Jackson's claims that Defendants breached their fiduciary duty to Jackson by paying themselves from his bank accounts during the pendency of his bankruptcy in violation of this Court's Order. Accordingly, pursuant to FRBP 7052(c), the Court should dismiss the Affirmative Defenses regarding Jackson's claims concerning the $178,692.51 wrongfully taken from his bank accounts post-petition, and should accordingly issue an Order and Judgment finding in favor of Jackson on those particular claims, requiring the Defendants to disgorge $178,692.51 plus interest, and compensate Jackson for the fees and expenses incurred by litigating his claims.

## **ARGUMENT**

**I.**     **JACKSON IS ENTITLED TO JUDGMENT ON PARTIAL FINDINGS BECAUSE GSO HAS FAILED TO SUSTAIN ITS BURDEN OF PROVING THEIR AFFIRMATIVE DEFENSES WITH RESPECT TO ITS SELF-PAYMENT OF $178,692.51 WITHOUT COURT APPROVAL AND IN VIOLATION OF THE COURT ORDER.**

At trial, the Defendants not only failed to adduce evidence in the record proving any of their Affirmative Defenses with respect to Jackson's claims of GSO's non-permissive self-payment, but actually put on the record numerous admissions *supporting* such claims. Rather than sustaining the Affirmative Defenses, the evidence in the record demonstrates that:

(a) Defendants concede they had a fiduciary duty to Jackson that encompassed a post-petition responsibility to adhere to the Retention Order of the Court and the applicable compensation procedures in order to receive compensation;

(b) Defendants admitted that they took the $178,692.51 post-petition from Jackson's accounts for alleged services/fees/expenses without seeking either Court approval or notifying Jackson of their unilateral violation of the compensation procedure in the Retention Order;

(c) Defendants agreed in their application to be appointed as financial consultants for Jackson to be bound by and were required to obtain Court approval for the sum of the $178,692.51 that they paid themselves from Jackson's accounts; and

(d) in addition to being taken without Court approval, the $178,692.51 encompassed compensation and expenses taken from Jackson's accounts that was both excessive and unreasonable.

Given the foregoing, Jackson should be granted judgment on partial findings dismissing the Affirmative Defenses in accordance with FRBP 7052(c), and the Court may render judgment as a matter of law in favor of Jackson on Jackson's claims in this regard. FRBP 7052 incorporates Federal Rule of Civil Procedure 52 ("FRCP 52") in its entirety and is available to litigants in an adversary proceeding in Bankruptcy Court. *See In re: Allou Distributors, Inc.*, 392 B.R. 24, 29 (Bankr. E.D.N.Y. 2008). The Rule provides, in relevant part:

> *"(c) Judgment on Partial Findings. If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue...."*

A judgment on partial findings pursuant to FRCP 52(c) is notably available to both Plaintiffs and Defendants. *See* Moore's Federal Practice 3d § 52.50[3] ("Rule 52(c) is broader than its predecessor because it is not limited to the plaintiff. Judgment may be entered against

either the plaintiff or defendant with respect to issues that may or may not be wholly dispositive of a claim *or defense*.") (emphasis added). Judgment on partial findings pursuant to FRCP 52(c) is appropriate where a court is able to "dispositive finding of fact on the evidence" after the evidence has been heard on a crucial issue. *See* Fed. R. Civ. P. 52, 1991 Advisory Committee Notes. More specifically, "[j]udgment may be entered pursuant to FRCP 52(c) where the [party] has not established its prima facie case, or where the court determines that the [party's] case is outweighed by a preponderance of the evidence." *In re: Allou*, 392 B.R. at 29 (citing *In re: Regency Holdings (Cayman), Inc.*, 216 B.R. 371, 374 (Bankr. S.D.N.Y. 1998)).

Plaintiff has met its burden as FRCP 52(c) movant, which is less than that required of a directed verdict movant. In evaluating an FRCP 52(c) motion, a court does not draw any inferences in favor of the non-moving party nor is the evidence considered in a light most favorable to the non-moving party. *In re: Allou*, 392 B.R. at 30; *Wechsler v. Hunt Health Systems, Ltd.*, 330 F. Supp. 2d 383, 433 (S.D.N.Y. 2004); *Matis v. United States*, 236 B.R. 562, 569 (E.D.N.Y. 1999) (affirming bankruptcy court's decision on FRCP 52(c) motion). Rather, the court assumes the position of the trier of fact and law, and accordingly must "weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." *Wechsler*, 330 F. Supp. 2d at 433 (quoting *Desiderio v. Celebrity Cruise Lines, Inc.*, 1999 WL 440775, *19 (S.D.N.Y. June 28, 1999)); *see also In re: Regency Holdings*, 216 B.R. at 374 ("the court acts as both judge and jury"). Turning to the instant matter, pursuant the FRCP 52(c) standard the Defendants have failed to prove any of the Affirmative Defenses through evidence adduced in the record at trial.

**A.  The Defendants Admit that They Owed Jackson a Duty of Fiduciary Care.**

The Defendants did not dispute at trial that they had a fiduciary duty to Jackson by virtue of his retention of them as his financial managers, accountants and consultants, and that such fiduciary duty continued post-petition. *See e.g.* GSO's Proposed Findings of Fact (AP-ECF No. 252) at p. 10 ¶ 3 ("Although GSO owed a duty to Jackson, it did not breach that duty to him"). Indeed, Oppenheim testified that the Defendants were under a duty to put Jackson's financial wellbeing before their own, and that their duty in that regard included an inherent obligation to manage his finances in a conservative manner, especially post-petition. *See* July 20, 2021 Trial Hearing Transcript ("7/20/21 Hearing Tr.") annexed hereto as **EXHIBIT A** 131:21-24; 132:6-132:14.

Furthermore, at trial Oppenheim confirmed that accountants such as the Defendants are very aware on a day-to-day basis of the existence of their fiduciary duty to their clients, because such fiduciary duty is based upon their client entrusting them to safeguard finances and to make sound financial choices on behalf of the client. *Id.* 133:1-133:10; 136:16-136:25. With specific respect to GSO's business relationship with Jackson, Oppenheim testified that Defendants had a fiduciary duty to Jackson, and that they held themselves out to Jackson as an accountant whose profession entailed discharging a duty to treat a client's money conservatively. *Id.* 134:24-135:16.

Oppenheim went on further to testify that he is aware that another obligation the Defendants had assumed, pursuant to their inherent fiduciary duty to Jackson, was the responsibility to refrain from taking money out of Jackson's accounts post-petition without following proper procedures or seeking approval. *Id.* 132:15-132:25. Oppenheim's testimony regarding the Defendants' understanding of their fiduciary responsibilities to Jackson post-petition were in accord with Jackson's testimony as to his own understanding of those

responsibilities. Jackson testified that he expected GSO would follow the orders of this Court when he continued to retain them post-petition. *See* July 19, 2021 Trial Hearing Transcript ("7/19/21 Hearing Tr.") annexed hereto as **EXHIBIT B** at 82:2-82:4. Jackson further testified that he relied on and expected GSO, as his retained financial managers, not to be wasteful with his assets post-petition, such as unilaterally taking money out of his accounts to pay for themselves for unnecessary fees and expenses that he was unaware of. *Id*. 78:22-79:9.

**B. The Defendants Concede that Violating this Court's Orders Would Have Constituted Their Breach of Fiduciary Duty to Jackson and Would Warrant Returning Jackson's Money that was Taken by Them.**

Oppenheim testified that he understood the Defendants' fiduciary obligation to Jackson post-petition to encompass a responsibility to follow proper procedures and obtain requisite approvals for seeking compensation. **Ex. A** 132:15-132:25. Oppenheim further testified that the Application to Employ GSO (ECF No. 27-2) contains representations by the Defendants' that they were "going to follow the rules and procedures of the bankruptcy court." *Id*. at 40:14-40:20. To that end, Oppenheim conceded in his trial testimony that he is aware that the Defendants were required to submit fee applications to this Court to be compensated for, at the very minimum, fees and expenses attributable for services rendered by the Defendants in connection with Jackson's bankruptcy. *Id*. 25:3-25:11; 26:1-8. Accordingly, per Oppenheim's testimony, the Defendants concede that they paid themselves $88,692.51 in alleged bankruptcy-related "fees and expenses" without filing any fee applications and obtaining the required Court approval. *Id*. 26:17-26:22; 46:18-46:21. Oppenheim further testified that, if it is determined that the Defendants violated this Court's Orders in paying themselves from Jackson's accounts, he will pay those sums back to Jackson. *Id*. 174:22-175:1. As to the three $30,000 monthly retainer fees that the Defendants also paid themselves from Jackson's account post-petition, Oppenheim

testified that "I told you if the judge tells me that the 30,00 a month is paid incorrectly, if she tells me that, then I will pay it back." *Id*. 46:15-47:1

### C. Unrebutted Evidence in the Record Establishes Jackson's Claims that the GSO Defendant's Self-Payment of the $178,692.51 Violated this Court's Orders.

#### 1. The Record Establishes that the GSO Retention Order Did Not Authorize Defendants to Pay Themselves on its Face.

A principal defense raised by the Defendants in response to Jackson's breach of fiduciary claims arising from their wrongful and unlawful self-payments is the following: the Court allegedly authorized them to take the aggregate $90,000 in monthly retainer fees they paid themselves post-petition from Jackson G-Unit Records, Inc. account (the "G-Unit Account") without seeking Court approval, and they thus did not breach the fiduciary duty they owed Jackson at the time they took those self-payments. The basic premise of this erroneous defense is their unsupported assertion that the Court authorized those self-payments because the retainer fees encompassed only services they rendered to so-called "Non-Debtor Entities" of Jackson "separate and apart from the other services [they] provided directly to Jackson during the pendency of his Bankruptcy Case." *See* GSO's Proposed Findings of Fact (ECF No. 252) at 4 ¶ 24-26. GSO proposes that this Court decide as a matter of law that the retainer payments in question "were not subject to approval by the Bankruptcy Court as they did not entail funds of the debtor, Jackson." *Id*. at 4 ¶ 12.

Both extensive discovery at depositions and at trial in this case, this Court's Order Approving Application to Employ GSO (the "GSO Retention Order") (ECF No. 149) specifically did not adopt paragraph three of the proposed order annexed to the original Application to Employ GSO (the "Original GSO Employment Application") (ECF No. 27-2) filed on July 19, 2015 that provided for GSO to be compensated by the flat $30,000 monthly

retainer fee at issue paid by G-Unit Records, Inc. without filing a fee application. Compare ECF No. 149 ¶ 4 with ECF No. 27-2 ¶ 3. This is because the Order signed by the court was a superseding proposed order filed by Jackson's bankruptcy counsel (the "Second Proposed GSO Employment Order") (ECF No. 131) as a result of objections filed by major Jackson creditors Sleek Audio, LLC ("Sleek") and Lastonia Leviston ("Leviston") specifically as to the Original GSO Employment Application's proposal to pay GSO the $30,000 flat monthly retainer fees without filing fee applications. *See* Sleek's Objection (ECF No. 79) ¶¶ 1-4; Leviston's Joinder in Sleek's Objection (ECF No. 85) ¶¶ 1-6. As a direct result of those objections, the verbiage of the Second Proposed GSO Employment Order, as later adopted by the Court for its GSO Retention Order, was amended to require GSO's compensation "in accordance with any interim procedures set forth in § 331, and as may be fixed by order of the Court. Such compensation shall be reviewed under the standard set forth in § 330(a). *Compare* ECF No. 27-2 ¶ 4 *with* ECF No. 149 ¶ 4 *and* ECF No. 27-2 ¶ 3.

Oppenheim acknowledged at trial that no authorization appears on the face of the GSO Retention Order authorizing the Defendants to pay themselves the retainer fees without filing fee applications. **Ex. A** 20:10-20:21. The Defendants have put forth no admissible evidence showing that the GSO Retention Order authorized their taking of the retainer fees.

### 2. The Record Establishes that Neither Jackson's Creditors nor the U.S. Trustee Understood the GSO Retention Order to Allow the Defendants to Pay Themselves Without Filing Fee Applications.

The record of the proceedings in Jackson's bankruptcy concerning the Application to Employ Boulevard as GSO's replacement filed on November 3, 2015 (the "Boulevard Employment Application") (ECF No. 220) establishes that Sleek, Leviston, and the U.S. Trustee each understood this Court's entry of the GSO Retention Order as a clear rejection by this Court

of the initial request to compensate GSO by a flat $30,000 monthly fee without filing fee applications, and as requiring GSO to file fee applications for any compensation pursuant to § 331.

Indeed, the Boulevard Employment Application annexed a proposed order requesting Boulevard to be compensated a cut-rate $17,500 monthly retainer fee (as opposed to the $30,000 GSO sought to charge) for certain services without filing fee applications with the Court. *See* ECF No. 220-2 ¶ 4. In this regard, the Boulevard Employment Application drew scrutiny to the fact that GSO had not filed any applications for any professional compensation. *See* Sleek's Objection (ECF No. 233); Leviston's Objection (ECF No. 236); U.S. Trustee's Objection (ECF No. 252). Those objections encompassed a number accusations by the objecting parties that GSO's failure to file any fee applications was indicative of a wrongful and/or unlawful conspiracy that was attributable to Jackson himself. In turn, such accusations against Jackson by the objecting parties were premised on the creditors' and Trustee's shared understanding that the Order entered by this Court authorizing GSO's retention required GSO to seek Court approval prior to being paid, as raised in their objections to GSO's application.

Sleek, in its objection joined by Leviston, noted that it and other creditors had objected to GSO's request to be paid the flat $30,000 fee by G-Unit Records on a pre-approved basis and "requested that the Court require, as part of the approval of GSO's retention on behalf of the Debtor that compensation from the Debtor's estate be condition upon the filing and approval of fee applications under Section 330 and 331 … thus mandating that … required fee applications delineate the work being performed by GSO for the debtor." ECF No. 233 ¶¶ 2-3. Sleek continued: "On September 18, 2015 the Court entered an Order authorizing the retention of GSO, *on terms consistent with those requested by the objecting parties*." *Id*. ¶ 3 (emphasis

added). In accordance with its understanding of the Court's Order authorizing GSO's retention, Sleek pointed out that "[s]ince its retention, GSO has not filed any documents with the Court that would allow the Court or any creditor to determine the scope of the services that GSO has provided to either the Debtor or any of the Related Entities," and went on to assert that GSO's continuing lack of transparency and compliance with the Court's Order in that regard had contributed to a "reasonable concern as to the motivations and actions of the Debtor in connection with the discontinuation of his relationship with GSO and his proposed retention of Boulevard." *Id.* ¶ 8. Given the "reasonable concerns" as to Jackson's "motivations and actions" that had been allegedly raised by GSO's non-compliance with the Court's Order, Sleek asked the court to either: (a) defer approving the Boulevard Employment Application at least until all of the 2004 Examination documents sought by the creditors from GSO had been produced; or (b) issue an order that the discontinuation of Jackson's relationship with GSO would not absolve GSO of its obligation "to provide information to creditors in connection with Debtor's case." *Id.* Sleek stated that this requested intervention by the Court as to GSO was needed "[i]n order to ensure that the action of the Debtor to shift advisors is not in fact part of *an effort to avoid cooperation with creditors*," and thereby suggested that GSO's unilateral violations of the Court's Order and the Bankruptcy Code constituted indicia of a nefarious effort to subvert the bankruptcy process attributable to Jackson. *Id.*

Sleek's objection the Trustee's December 7, 2015 lack of approval of the Boulevard Employment Application that was based upon the history of objections to the GSO Employment Application's request to pay GSO $30,000 monthly retainer fees from G-Unit Records without filing fee applications. The Trustee characterized all of the prior previous objections on the grounds "that the fees of GSO should be subject to judicial review and approval pursuant to

interim applications filed under Sections 330 and 331 of the Bankruptcy Code." *Id.* ¶ 6-7. The Trustee stated that, following the objections, "[t]he Court approved the retention of GSO under Section 327 (not Section 328) *and imposed the obligation of Sections 330 and 331 to file fee applications.*" *Id.* ¶ 8. On this understanding of the history of the prior proceedings as to GSO, the Trustee pointed out that Boulevard was applying to replace GSO without GSO having ever filed any application for fees, and the Trustee therefore raised a need for disclosure from Jackson as to the date upon which GSO had ceased providing services to him. *Id.* at ¶ 6. Given the Court's GSO retention Order understood by the Trustee to have rejected the request to pay the $30,000 monthly GSO retainer without fee applications, the Trustee stated that the new request to pay Boulevard a significantly more cost-effective $17,500 retainer without fee applications indicated that "through this arrangement the Debtor *is attempting to circumvent the Bankruptcy Code and avoid oversight from the Court and parties in interest.* The Court rejected such a request in considering the retention of GSO and should do the same with respect to Boulevard. As with GSO, Boulevard should be employed under Section 327." *Id.* at 5 (emphasis added).

The Defendants, for their part, have failed to put forth any evidence in the record establishing that any party involved with the Jackson bankruptcy believed after the entry of the GSO Retention Order that they were authorized to pay themselves the retainer fees and expenses without seeking Court approval. The assertion is without merit and stated in their Proposed Findings of Fact and Conclusions of Law that Jackson's claim against them concerning the $90,000 in retainer fee payments "directly contradicts and conflicts" with the position that he took in the GSO Employment Application and related proceedings and, incongruously, they attempt to support their position by raising Jackson's submission of the *Boulevard* Employment Application as evidence that they had been authorized by the GSO Retention Order to pay

themselves over the months preceding the Boulevard Employment Application's existence. This argument should be dispatched in short shrift. On the Defendants' first point, Jackson has never asserted that it was not originally requested for the Defendants to be compensated the $30,000 retainer fees without filing fee applications; Jackson has asserted that the Defendants were never authorized to do so by this Court, nor were Defendants told they could do so, and they did so improperly in breach of its duties to Jackson. On the Defendants' second point, the Boulevard Employment Application and related proceedings and Court Orders occurred independent of and subsequent to the Defendants' wrongful pattern of self-payment that form the basis of this action. Moreover, the monthly rate at which Boulevard was authorized to be compensated a flat fee for certain financial services was $17,500 *i.e.,* nearly half the $30,000 monthly rate charged by the Defendants that Jackson's creditors filed successful objections to.

> 3. **Defendants Have Failed to Produce Evidence Establishing that the Alleged Bankruptcy Fees and Expenses Were Taken from Jackson's Accounts in Conformity with this Court's Orders.**

As set forth herein, the Defendants have admitted at trial that they understand the GSO Retention Order required them to file fee applications for any so-called bankruptcy "fees and expenses," such as the $88,692.51 amount they admit having unilaterally paid themselves from Jackson's DIP account. *See e.g.* **Ex. A** 26:17-26:22; 46:18-46:21; 73:11-73:24. Defendants have also conceded that understood they had a duty, as Jackson's retained fiduciaries at the time, to follow proper procedures and obtain requisite approvals for seeking compensation post-petition. They have failed to prove any of the Affirmative Defenses with respect to, at the very least, any bankruptcy-related fees and expenses they took. *See Id.* 132:15-132:25. Accordingly, with respect to any bankruptcy-related fees, they have conceded: (a) a fiduciary duty they understood having as to Jackson that encompassed their compliance with this Court's Orders; (b) their

failure to comply with this Court's Orders; and (c) Jackson being deprived from accessing those funds in his debtor in possession account as a result of their taking the funds in wrongfully and unlawfully.

**4.    The Evidence in the Record Refutes the Defendants' Assertion that they "Reasonably Believed" they Could Pay Themselves the $90,000 in Alleged Retainer Fees from Jackson's G-Unit Account.**

Defendants' defense to Jackson's claims is that they either were authorized by this Court to pay themselves the alleged retainer fees, or that they "reasonably believed" they were authorized by this Court to take those funds. Core to this defense is the Defendants' assertion that the retainer fees they took constituted compensation for services they were retained to render to "Non-Debtor" entities "separate" from Jackson as an individual and therefore not subject to this Court's approval. *See* GSO Proposed Findings of Fact and Conclusions of Law (ECF No. 252) at 4 ¶ 12, 24-26. This assertion was refuted by admissions made by Oppenheim during trial.

At trial, Oppenheim was asked whether he ever provided Jackson's bankruptcy counsel with any invoices for tax work the Defendants did in the month of October, 2015. Oppenheim responded: "For the bankruptcy we did, yes. Not for Curtis himself. There is a difference. *His personal tax return was not to do with the bankruptcy*." *See* July 23, 2021 Trial Hearing Transcript ("7/23/21 Hearing Tr.") annexed hereto as **EXHIBIT C** at 156:16-157:12 (emphasis added).  The undersigned responded to Oppenheim's answer by asking whether he was aware that Jackson filed for Chapter 11 Bankruptcy as an individual. Oppenheim responded in the affirmative. The undersigned went on to ask Oppenheim: "Is it your testimony that his individual tax return had no relevance to the bankruptcy court?" *Id*. 157:16-157:17. Oppenheim's response was: "I'm testifying that we did not bill his – the bankruptcy court for the *tax work done for Curtis Jackson*. That's what I'm saying." *Id*. 157:18-157:20 (emphasis added). Within the same

line of questioning, Oppenheim further stated on the record that, with respect to tax services the Defendants were retained to render to Jackson individually, "we got our retainer up front." *Id.* 156:16-157:2.

The above testimony from Oppenheim constitutes the Defendants' admission that they took the $90,000 in alleged post-petition retainer fees from the G-Unit Records, Inc. account with the understanding that the fees encompassed post-petition tax services that Jackson had retained them to render for him personally. Moreover, these admissions by Oppenheim negate the Defendants' repeated claim that they took the retainer fees without seeking Court approval in good faith because they "reasonably believed" this Court had authorized them to pay themselves for work done for "Non-Debtor Entities" that were "separate and apart from the other services [they] provided directly to Jackson during the pendency of his Bankruptcy Case." Oppenheim has established that the Defendants willfully took the retainer fees to compensate themselves prospectively for tax services they believed were attributable to Jackson individually. Oppenheim's admissions also require the inference that the Defendants, at bare minimum, misrepresented their competency and qualifications to render Jackson the competent and professional post-petition financial services detailed in the GSO Employment Application, and made those misrepresentations both to Jackson and this Court.[1]

Assuming *arguendo*, that the Defendants believed they had been given authorization by this Court to pay themselves the retainer fees without Court approval for services rendered to "Non-Debtor Entities," that limited authorization would not have extended to services they were

---

[1] *See e.g.,* ECF No. 27 ¶¶ 12, 14, 18 (GSO represented to Jackson and this Court that it "[h]a[d] the *necessary experience and background to deal effectively* with [] the financial advisory and accounting issues and problems that may arise *in the context of this Bankruptcy case*;" GSO is "a premier business management firm;" "GSO has stated its desire and willingness to act in this chapter 11 case and render *the necessary professional services* as the financial advisor and account (sic) to the Debtor. *The Debtor requires knowledgeable personnel to render these professional services.* As noted above, *GSO has substantial expertise in all of these areas.*") (emphasis added); *see also* ECF No. 27-1 ¶ 5 (GSO declaring that "GSO and professional it employs are qualified to be Debtor's financial advisor and accountant in the matters for which the Application proposes to employ GSO").

retained to be rendered to Jackson as an individual.  Oppenheim's testimony on this point makes clear that the retainer fees included payment for bankruptcy-related services *i.e.,* post-petition financial services attributable to Jackson *individually*. Because it is not disputed in this matter that this Court's Orders required GSO to file fee applications for any bankruptcy-related compensation, by logical extension the Defendants have accordingly admitted to violating this Court's Orders by paying themselves the retainer fees without seeking Court approval.

**D. Unrebutted Evidence in the Record Establishes Jackson Damages Attributable to the GSO Defendant's Breach of Fiduciary Duty in Paying Themselves Wrongfully and Unlawfully from His Accounts.**

The Defendants' Ninth Affirmative Defense in this action is: "The [Defendants] deny that the Plaintiff was damaged as a result of any act or omission by the Defendants as alleged in the Complaint." *See* AP-ECF No. 10 at 10. Evidence in the record establishes that, in addition to being damaged by virtue of losing access during bankruptcy to the $178,692.51 taken by the Defendants as alleged compensation, Jackson sustained damages by reason of the amount that was excessive and unreasonable based on expenses attributed to luxury travel and expenditures by GSO partners and employees, including Jonathan Schwartz, who according to testimony from defense witnesses did not perform any substantive work on Jackson's behalf.

**E. The Record Establishes the Parties' Understanding that GSO's Exercise of Fiduciary Care was an Inherent and Necessary.**

The record establishes GSO's understanding that the nature of the services for which they paid themselves required them to assume a fiduciary duty to Jackson and faithfully discharge that duty. Their breach of their fiduciary duty to Jackson, as has been established in the record, in and of itself negates the value of the services for which they paid themselves from Jackson's accounts, and as such, the Defendants are not entitled to the fees and expenses they took from Jackson's accounts.

Testimony in this matter repeatedly established the Defendants' understanding that their discharge of fiduciary duty to Jackson was a basic term of the services for which they were retained by Jackson. Oppenheim testified that the Defendants were under a duty to put Jackson's financial wellbeing before its own, and that its duty in that regard included an inherent obligation to manage his finances in a conservative manner, especially post-petition. **Ex. A** 132:6-132:14. Oppenheim went on to testify that he is aware that another obligation the Defendants assumed, pursuant to their fiduciary duty to Jackson, was refraining from taking sums out of Jackson's accounts post-petition without following proper procedures or seeking approval. *Id*. 132:15-132:25. Furthermore, Oppenheim agreed that accountants like the Defendants are acutely aware on a daily basis of their fiduciary duty to their clients, because such fiduciary duty flows inherently from their client entrusting them to safeguard finances and to make sound financial choices on behalf of the client. *Id*. 133:1-133:10; 136:16-136:25. With specific respect to the Defendants' business relationship with Jackson, Oppenheim testified that they had a fiduciary duty to Jackson, and that they held themselves out to Jackson as accountants whose profession entailed a duty to treat their client's money conservatively. *Id*. 134:24-135:16.

Jackson, for his part, testified that he expected the Defendants to follow this Court's Orders when retaining them post-petition. **Ex. B** 82:2-82:4. He further testified that he relied on and expected GSO, as his retained financial managers, not to be wasteful with his assets post-petition, such as unilaterally taking funds from his accounts to pay for themselves for unnecessary fees and expenses that he was unaware of. *Id*. 78:22-79:9. He testified he would not have approved their self-payments had he been aware of them at the time, especially given the objections by Leviston and Sleek to the GSO Employment Application. *Id*. 71:15-73:7.

Accordingly, the professional fees and expenses improperly taken by the Defendants from Jackson's account were deficient and not up to the standards established by the profession, and were excessive and unreasonable.   Jackson has been damaged by the Defendants paying themselves excessive fees and expenses.   The Defendants' assertion that Jackson suffered no damages by reason of their self-payment fundamentally asks this Court to agree that Jackson should be forced into accepting that former financial managers should be able to pay themselves prime rates for surreptitiously breaching their fiduciary duty and violating Court Orders while Jackson was in bankruptcy. Their position is untenable and should not be endorsed by this Court.

**F. The Court Should Enter an Order Requiring the Defendants to Disgorge the $178,692.51 Taken from Jackson, Compensate Jackson for Legal Fees in this Action, and award Punitive Damages.**

In addition to dismissing the Affirmative Defenses with regard to Jackson's self-payment claims, the Court should require Defendants disgorge the $178,692.51 taken from Jackson by in violation of this Court's Orders, and in breach of fiduciary duty to Jackson. Disgorgement is a well-established bankruptcy remedy for a retained professional's failure to disclose to both creditors and the debtor the existence of fees and expenses it paid to itself without court notice or court approval. *See In re Resource Tech., Corp.*, No. 08 C 4235, 2008 WL 4696073 (N.D. Ill. Oct. 20, 2008) (affirming bankruptcy court's order requiring disgorgement of fees by attorney for Chapter 11 trustee where law firm failed to comply with the bankruptcy court's interim compensation order requiring the circulation of monthly invoices and periodic fee applications); *In re Howard Ave. Station*, L.L.C., 568 B.R. 146 (Bankr. M.D. Fla. 2017) (noncompliance with the Bankruptcy Code's requirements concerning an estate professional's compensation generally merits denial of compensation plus disgorgement of all compensation already received); *In re Alletto*, No. 07 30636 ASD, 2010 WL 5124721, at *2 (Bankr. D. Conn. Dec. 8, 2010) (special

counsel's payment of fees to itself from a litigation settlement without filing a fee application with the court was a violation of the court's order retaining the special counsel meriting full disgorgement of the fees). As the record detailed in the foregoing firmly establishes, the Defendants failed to disclose their self-payments to Jackson, the creditors, and this Court during the pendency of Jackson's bankruptcy, and accordingly meet the criteria for disgorgement. As the record established at trial reflects, the Defendants knew they took Jackson's money without Court approval. The Court should accordingly remedy their wrongful taking of Jackson's funds by, among other things, ordering them to disgorge those funds.

Further, bankruptcy courts may use their inherent powers under 11 U.S.C. § 105(a) to award sanctions as against a party who engages in bad-faith conduct, such where the record establishes that a party willfully disobeyed a court's orders or willfully engaged in other improper conduct such as abuse of bankruptcy process. *See In re Sanchez*, 941 F.3d 625, 628 (2d Cir. 2019) (holding that bankruptcy courts, like Article III courts, possess inherent sanctioning powers); *In re Count Liberty*, LLC, 370 B.R. 259, (Bankr. C.D. Cal. 2007) (a bankruptcy court has the inherent authority to sanction a party who willfully disobeys court orders or acts in bad faith, such as willful improper conduct); *In re Velo Holdings Inc.*, 500 B.R. 693, 700 (Bankr. S.D.N.Y. 2013) ("A bankruptcy court may hold a party in contempt and award sanctions after that party has willfully violated a court order."); *In re Miszko*, 627 B.R. 809, 816 (Bankr. S.D.N.Y. 2021) ("The abuse of process provision of Section 105(a) has ... been employed to impose sanctions upon those who willfully mislead the bankruptcy court …. or who fail to comply with court orders [.]).

Included amongst the type of sanctions a bankruptcy court may award as against a bad-faith actor are legal fees. *See In re Haemmerle*, 529 B.R. 17, 29 (Bankr. E.D.N.Y. 2015) (

"Courts have awarded attorneys' fees when a party (1) willfully disobeys a court order, and (2) is found to have acted in bad faith, vexatiously, wantonly or for oppressive reasons."); *In re Nassoko*, 405 B.R. 515, 520 (Bankr. S.D.N.Y. 2009) ("Attorney's fees may also be awarded, if in addition to willfully disobeying the court order, the party acts in bad faith, vexatiously, wantonly or for oppressive reasons."). The record establishes that the Defendants knew that the money it paid itself was without Court approval, and that the Defendants have refused over the years to return that money to Jackson, despite requests to do so. These willful actions have forced Jackson to expend significant time and expense in litigating this matter, as such, the Court should award Jackson the legal fees and costs he has incurred due to the Defendants' fallacious and bad-faith conduct. Furthermore, this bad faith conduct warrants the awarding of punitive damages.

## CONCLUSION

**WHEREFORE**, for the foregoing compelling reasons, Jackson respectfully requests that this Court enter an Order: (a) dismissing the GSO Defendant's Affirmative Defenses with respect to Jackson's claims concerning their self-payments post-petition pursuant to FRBP 7052; (b) entering judgement against the Defendants on Jackson's claims in this regard as a matter of law; (c) requiring the Defendants to disgorge the sums they took from Jackson's accounts post-petition; (d) requiring the Defendants to compensate Jackson for the legal fees and expenses he has incurred litigating this action to obtain the disgorgement of the wrongfully taken funds back from the Defendants; (e) awarding punitive damages for the willful and bad faith conduct of the Defendants; and (f) granting such other and further relief as the Court deems just and proper.

Dated: September 10, 2021
   New York, New York

        Respectfully Submitted,

        **BARATTA, BARATTA & AIDALA LLP**

By: /s/ Imran H. Ansari

     Imran H. Ansari, Esq.
     546 Fifth Avenue, 6th Floor
     New York, NY 10036
     T: (212) 486-0011
     F: (212) 750-8297
     iansari@aidalaw.com

        **ZEISLER & ZEISLER, P.C.**

By: /s/ John L. Cesaroni

     John L. Cesaroni (ct29309)
     10 Middle Street, 15th Floor
     Bridgeport, Connecticut 06604
     Tel: 203.368.4234
     jcesaroni@zeislaw.com

     *Attorneys for Plaintiff*

21

**CERTIFICATE OF SERVICE**

I, John L. Cesaroni, certify that on September 10, 2021, a copy of the foregoing was filed electronically and emailed via the Court's CM/ECF electronic noticing system.  Parties may access this filing through the Court's CM/ECF System.

/s/ John L. Cesaroni
John L. Cesaroni (ct29309)
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Tel: 203.368.4234
jcesaroni@zeislaw.com
*Counsel for Plaintiff*